**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PAUL C. CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:21-cv-01007-DLF |
| | ) | |
| DOCUSIGN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT DOCUSIGN INC.'S RENEWED MOTION TO DISMISS FOR IMPROPER VENUE**

Plaintiff, Dr. Paul C. Clark, ("Dr. Clark") by and through the undersigned counsel, hereby opposes Defendant DocuSign, Inc.'s ("DocuSign") Motion to Dismiss.

I.     **PROCEDURAL POSTURE**

Dr. Clark is a Bethesda, Maryland-based independent inventor and technical expert recognized in the field of email security. ECF No. 5 ("Amended Complaint") at ¶¶ 2-3. Dr. Clark is the sole inventor of U.S. Patent Nos. 8,695,066; 9,931,957; and 10,129,214 (the "patents-in-suit"), which he is asserting in the present willful patent infringement action. *Id.* at ¶¶ 11, 12, 25, 38. "DocuSign has been and is now making, using, selling, and/or offering for sale within the United States systems or methods for electronic signature and e-contracting that infringe [the patents-in-suit], literally and/or under the doctrine of equivalents." *Id.* at ¶¶ 13, 27, 40. DocuSign knew or should have known that its systems or methods for electronic signature and e-contracting infringed the patents-in-suit. *Id.* at ¶¶ 24, 37, 44.

1

On May 11, 2021, Dr. Clark filed the Amended Complaint.  ECF No. 5.  On May 25, 2021, DocuSign moved to dismiss the Amended Complaint for improper venue. ECF No. 6.  On June 8, 2021, Dr. Clark opposed DocuSign's motion and moved for venue discovery.  ECF No. 8.

On February 22, 2022, this Court issued an Order denying DocuSign's motion to dismiss without prejudice and granting Dr. Clark's discovery motion in part.  ECF No. 20.  The Court entered a Joint Discovery Plan on March 2, 2022.  ECF No. 22.  On March 2, 2022, Dr. Clark served written discovery requests.  Declaration of Frederick N. Samuels (Samuels Decl.) ¶2.  On March 29, 2022, Dr. Clark deposed █████████ ████, the witness designated by DocuSign as its corporate representative under Fed. R. Civ. P. 30(b)(6) to testify on the following topics:

(1) identity, job description, duties of DocuSign employees or officers that (a) reside in the Washington, D.C. ("the District") and/or (b) work from a co-working space located in the District;

(2) The number of DocuSign employees, the number of DocuSign employees that work remotely, and the number of DocuSign employees that work in the District, from the years 2019 through December 31, 2021;

(3) The facts and circumstances surrounding the creation and dissemination of job listings posted between January 1, 2019 through December 31, 2021 including but not limited to job listings that include the District as a location;

(4) DocuSign's remote work policy for each of the years 2019, 2020 and 2021;

(5) DocuSign's responses to Plaintiff's First Set of Interrogatories Relating to Venue to Defendant and the documents referred to therein; and

(6) The authenticity, chain of possession, and content of documents produced by

Defendant in response to the requests served upon Defendant in the present.

Samuels Decl., Ex. 1 (30(b)(6) Notice).

## II.   LEGAL STANDARD

28 U.S.C. § 1400(b) governs venue in patent infringement cases. *See TC*

*Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017) (citations

omitted). Under 28 U.S.C. § 1400(b), a civil action for patent infringement may be

brought in a judicial district where (1) "the defendant resides," or (2) "where the

defendant has committed acts of infringement and has a regular and established place

of business."[2] 28 U.S.C. § 1400(b). Because venue is "an issue unique to patent law,"

Federal Circuit law applies to application of 28 U.S.C. § 1400(b). *See In re ZTE (USA),*

---

1 ████████████████████████████████████████████

[2] Defendant argues improper venue based on its alleged lack of "a regular and established place of
business in D.C." under 1400(b)(2) and concedes the "acts of infringement" element for the purposes of
its motion. *See* ECF No. 27-1, p. 5-6.

*Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018) (citation omitted). "In deciding whether a defendant has a regular and established place of business in a district, no precise rule has been laid down and each case depends on its own facts." *In re Cray, Inc.*, 871 F.3d 1355,1362 (Fed. Cir. 2017). The Federal Circuit set forth a three-part test for evaluating whether a defendant has a "regular and established place of business" in the district: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *Id.* at 1360.

The plaintiff typically bears the burden of establishing that venue is proper once challenged by a Rule 12(b)(3) motion. *ZTE*, 890 F.3d at 1013. When a plaintiff brings suit in an improper venue, the district court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see also* Fed. R. Civ. P. 12(b)(3). At the motion to dismiss stage, a "plaintiff need only make a *prima facie* showing of [venue]." *ZTE*, 890 F.3d at 1013. A court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Id.* A court may cons*Id.*er material outs*Id.*e the pleadings in its determination. *Id.*

## III.   ARGUMENT

### A.   Discovery Has Revealed That DocuSign Has a Regular and Established Place of Business in the District of Columbia

A party has a "regular and established" place of business under 28 U.S.C. § 1400(b) if three prongs are satisfied: (1) there is a "physical place in the district"; (2) the

"place" is a "regular and established place of business"; and (3) the "place" is "the place

of the defendant". *Cray*, 871 F.3d at 1360.

### 1. The Home Offices of DocuSign's Employees Satisfy the "Physical Place" Requirement

DocuSign admits in its motion that it ███████████████████████████

███████████████████████████ In response to Dr. Clark's Interrogatories,

DocuSign produced a spreadsheet ████████████████████████████

████████████████████████████ █████████████████████

████████████████████████████████████████

███████████████████████████████, the month that the

present action was filed. Samuels Decl., Ex. 3.  Accordingly, it is fair to say that

somewhere between nine and twenty DocuSign employees had home based offices in

the District in April 2021.  Although ██████████████ was able to provide little to no

information as to the tasks and duties performed by any of the DocuSign's District-

based employees, DocuSign did provide ████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

████████████████████████████████████

---

[3] ████████████████████████████████████
████████████████████████████████████ Accordingly, in this paper, specific employees
will be referred to as Doe followed by a number corresponding to the row in the DC Employee
spreadsheet where that employee is listed, e.g. Doe 1, Doe 2, etc.

███████████████████████████   Since DocuSign claims that it does not have a physical office or a co-working space in the District, it follows that its District employees perform their work duties from their respective homes.  There is no evidence in the record that any of the District-based employees are classified as anything other than remote irrespective of the pandemic.

DocuSign, ostensibly relying on *RegenLab USA LLC v. Estar Technologies Ltd.,* 335 F.Supp.3d 526, 549 (S.D.N.Y., 2018), argues that its employees home offices in the District cannot be considered a "physical place of business" because not all of its employees were remote designated in 2019 and too few of those who were remote designated resided in the District in 2019.  *RegenLab* does not stand for such a sweeping proposition.  In fact, *Cray* requires only that there be a physical location in the district from which the business of the defendant is carried out.  *Cray,* 871 F.3d at 1362. By any measure, the home offices of DocuSign's District employees meet this requirement.

### 2.    The Home Offices of DocuSign's District Employees Constitute a Regular and Established Place of Business of DocuSign

The record demonstrates that DocuSign has a regular and established place of business in the District.  "A business may be 'regular', for example, if it operates in a steady, uniform, orderly and methodical manner."  *Cray*, 871 F.3d at 1362.  While the doing of a single act pertaining to a particular business will not be considered engaging in or carrying on the business, a series of such acts would be so considered.  *Id.*  To be established, the business must be settled certainly, or fixed permanently.  *Id.* at 1363. As it relates to employees' homes, if an employee can move his or her home out of the

district without approval of his or her employer, such would cut against the employee's home being considered a place of the defendant.  *Id.*

DocuSign does not substantively challenge whether the homes of its District employees are regular.  That is, DocuSign does not contend that the business carried out by its employees in their respective homes is sporadic or isolated.  Any contention of sporadic and isolated activity is undermined by record.  DocuSign has had a continuous presence in the District since well before this case was filed.  DocuSign has been registered to do business in the District since April 2018.  Samuels Decl., Ex. 4 (DCRA certificate). ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

This steady and established presence in the District demonstrates that DocuSign's presence is regular and established.  *Cray,* F. 3d. at 1363 ("…a five-year continuous

--------------------------------

[4] Dr. Clark does not have data showing how many District employees DocuSign had between the time it registered to do business in the District and January 2019.
[5] ████████████████████████████████████████
████████████████████████████████████

presence in the district demonstrates that the business was established for purpose of venue.").

███████████████████████████████████████████████

███████████████████████████████████████ this Court should infer that those employees performed duties in the District consistent with their job titles as testified to ████████████████ *See generally* ██████████████

DocuSign's employees have not merely worked out of their homes in the District by happenstance.  DocuSign has been registered to do business in the District since April 2018.  Samuels, Decl. Ex. 4 . ████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

DocuSign also targets the District for job openings on third party websites, sometimes explicitly stating that the job has its "[p]referred base in Washington D.C. area". ECF No. 7-1, pg. 5; ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████   The foregoing demonstrates that, DocuSign has a regular and established place of business in the District.

DocuSign argues that its employees' homes cannot be considered "regular" or "established" because DocuSign does not condition its employment on residence in the District.  DocuSign's argument is unavailing. Contrary to the arguments advanced by DocuSign in its Motion and ███████████ deposition testimony, DocuSign imposes real requirements on employees who want to move to a location outside of the District. In addition to the requirements identified by DocuSign in its motion, █████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████  █████

██████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████

DocuSign further argues that its employee relocation flexibility is evidenced by the fact that a few of its employees who once lived in the District have now moved out of the District.  This point is of little import.  *Cray* makes clear that a business can move its location.  *Cray*, 871 F3d. 1363.  In any event, DocuSign has maintained a continuous

presence in the District where, among other activities, it prov*Id.*es computer systems design services. *Id.* The presence has continued in spite the few employees who allegedly left the District.

### 3.   DocuSign Employees Home Offices Are "Of DocuSign"

The third *Cray* factor requires that the "place" be "a place of the defendant" and not "solely a place of the defendant's employee." *Cray*, 871 F.3d at 1363. The defendant "must establish or ratify the place of business." *Id.* Relevant considerations include whether the defendant: (a) owns or leases the place or exercises other attributes of possession or control over the place; (b) has conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place; (c) markets or advertises to the extent it indicates that the defendant itself holds out a place for its business in the district; (d) represents that it has a place of business in the district; and (e) conducts similar activity at the place compared to the defendant's other places of business. *Id.*

In *RegenLab*, Judge Carter applied the Cray factors to the home offices of individual sales executives. There, sales executives worked out of their homes and the defendant company paid no part of their rent. *RegenLab*, 335 F.Supp.3d at 552. The salespeople were not required to live in their sales areas, and all customer relations were handled at the corporate office in Texas. *Id.* The company "prefer[ed]" that the employees "live in their assigned sales areas" and solicited salespeople in various regions through public advertisements. *Id.* The employees did not "maintain an inventory of product or literature for sale." *Id.* Employees did possess "sales kits" which included "less than fifteen copies of literature" and a demonstration product. *Id.* They

10

used materials belonging to their employer to perform sales demonstrations, which they performed in New York state. *Id.* The defendant did not promote the salespeople's presence in New York. *Id.* After weighing the *Cray* factors, the court found that taken together, they demonstrated that the defendant "has ratified a regular and established place of business in New York." *Id.*

Here, similar to *RegenLab*, DocuSign



[REDACTED]

[REDACTED]

In numerous job postings in 2021, DocuSign solicited potential employees to work in the District.   ECF Nos. 7-5 (DocuSign job listings identifying Washington D.C.) and 7-6 (third party job listings for DocuSign identifying Washington, D.C.).  Even today, DocuSign continues to target jobs to the District.  Samuels Decl., Ex. 9 (job listings). Moreover, given [REDACTED]

[REDACTED] the Court can infer that at least some of the District employees, specifically the [REDACTED]

[REDACTED]

[REDACTED]  In view of DocuSign's preference for having certain employees located in the District, its advertising for District employees and the activities of its District employees operating from their home offices, Dr. Clark has demonstrated that DocuSign's District employees' home offices are "of DocuSign" for the purpose of establishing venue.  *RegenLab*, 335 F.Supp.3d at 552.

The present facts are distinguishable from the cases relied upon by documents that hold that employee homes are not places of business "of the Defendant" and are more in line with *RegenLabs*.

## B.   Alternatively, Venue Transfer Is Appropriate

In the event that the Court is inclined to find the District to be an improper venue, Dr. Clark requests transfer to the district in which Defendant resides, the District of

---

[6] [REDACTED]

Delaware, rather than dismissal. 28 U.S.C. § 1406(a) permits the Court to "in the interest of justice, transfer such case to any district or division in which it could have been brought." Whether transfer is "in the interest of justice" is a decision "committed to the discretion of the district court." *Fam v. Bank of America NA (USA)*, 236 F.Supp.3d 397, 408 (D.D.C. 2017).

 As an alternative, transfer is appropriate in this case for four basic reasons.

 First, the "standard remedy for improper venue is to transfer the case to the proper court rather than dismissing it—thus preserving a [plaintiff's] ability to obtain review." *Nat'l Wildlife Fed'n v. Browner*, 237 F.3d 670, 674 (D.C. Cir. 2001). The presumption favoring transfer over dismissal is applicable to the present suit.

 Second, Defendants will not be prejudiced by transfer. Courts consider "whether transfer would prejudice Defendant's position on the merits." *Fam*, 236 F.Supp.3d at 408 (*citing McQueen v. Harvey*, 567 F.Supp.2d 184, 188 (D.D.C. 2008)). This Circuit has found that "[r]efusal to transfer spells the end to the action, while transfer would not prejudice the defendants' position on [the] merits," and "[t]he Supreme Court has inferred a congressional purpose underlying section 1406(a) favoring the transfer of cases when procedural obstacles 'impede an expeditious and orderly adjudication ... on the merits.'" *Fam*, 236 F.Supp.3d at 409 (*quoting Sinclair v. Kleindienst*, 711 F.2d 291, 293-94 (D.C. Cir. 1983)). Defendant did not dispute the substantive merits of Dr. Clark's claims in its motion, and permitting transfer would not hinder Defendant's ability to defend its position on the merits.

 Third, Dr. Clark's Amended Complaint has no substantive defects that warrant dismissal. Although D.C. courts "decline[ ] to decide the merits of the plaintiff's claim

when it has already determined that it is an improper venue for adjudicating it," *Id.* at 409 (*quoting Roman-Salgado v. Holder*, 730 F.Supp.2d 126, 131 (D.D.C. 2010), they often "take a peek at the merits" to determine whether transfer is in the interest of justice. *Id.* at 409-10 (*quoting Laukus v. United States*, 691 F.Supp.2d 119, 127 (D.D.C. 2010)). Only where the complaint has serious substantive problems or significant procedural defects like *res judicata* do courts find dismissal appropriate. *See id.* at 409-10 (citations omitted). Nothing in Dr. Clark's Amended Complaint or Defendant's motion suggest that Dr. Clark's claims are defective to the point of meriting dismissal.

Fourth, the District of Delaware would have personal jurisdiction and would be a proper venue for the present case, since it is the place where Defendant is incorporated and therefore resides. *See* Amended Complaint, ¶ 4; *TC Heartland*, 137 S. Ct. at 1520. The case "could have been brought" in the district, and therefore 28 U.S.C. § 1406(a) is satisfied.

In its motion, DocuSign requests transfer to San Francisco, California arguing that the parties are involved in pending litigation there.  While it is true that DocuSign sued Dr. Clark in San Francisco, California shortly after this case was filed, that case was dismissed without prejudice for lack of personal jurisdiction and violation of the first-to-file rule.  Samuels Decl., Ex. 10 (docket sheet). DocuSign then filed an amended complaint, which Dr. Clark again moved to dismiss for lack of personal jurisdiction.  *Id.* That motion has been argued but has not yet been decided.  Transfer to California would present an undue hardship on Dr. Clark, an individual and Maryland resident. In contrast, although it has multiple national and international offices, Delaware is

DocuSign's state of incorporation.  Accordingly, if transfer is to occur Delaware is the most equitable forum.

## IV.    Conclusion

For the reasons stated above, Dr. Clark respectfully request that this Court deny DocuSign's motion to dismiss.


Respectfully submitted,
Counsel for Plaintiff


/s/ Frederick Samuels
Frederick N. Samuels, Esq.
D.C. Bar No. 436202
CAHN & SAMUELS, LLP
1100 17th St., NW
Suite 401
Washington, DC 20036
Tel: 202-331-8777
Fax: 202-331-3838
Email: frederick.samuels@cahnsamuels.com

**CERTIFICATE OF SERVICE**

The foregoing document was filed under the Court's CM/ECF system, automatically effecting service on counsel of record for all other parties who have appeared in this action on the date of such service.  Additionally, this document and the attachments thereto were served via email on all counsel of record.

By: /s/ Frederick Samuels
Frederick N. Samuels, Esq